IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORAD
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-01362-MSK

JENNIFER HAWKES,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

## OPINION AND ORDER REVERSING AND REMANDING DISABILITY DETERMINATION

**THIS MATTER** comes before the Court as an appeal from the Commissioner's Final Administrative Decision ("Decision") determining that the Plaintiff Jennifer Hawkes is not disabled within the meaning of §§216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Having considered all of the documents filed, including the record **(#11)**, the Court now finds and concludes as follows:

## JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g). Ms. Hawkes sought disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively, based on mental and physical impairments that rendered her unable to work as of March 15, 2013.[1] The state agency denied her claim. She requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] Ms. Hawkes initially alleged that she was unable to work as of March 15, 2012 but amended that date to March 15, 2013 at the hearing before the ALJ.

1

After the hearing, the ALJ issued an unfavorable decision that Ms. Hawkes was not disabled. Ms. Hawkes appealed to the Appeals Council, which denied her request for review, making the ALJ's determination the final decision of the Commissioner. Ms. Williams timely appealed to this Court.

## STATEMENT OF FACTS

The Court offers a brief summary of the facts here and elaborates as necessary in its analysis.

Ms. Hawkes was born on November 21, 1985. At the time of the Decision, she was 30 years old. She has a limited education and work history, having only graduated from high school, taken only two college-level courses, and worked part-time as a waitress. She contends that a combination of mental and physical impairments prevent her from working.

Ms. Hawkes has a long history of mental health impairments. When she was 12 years old, she began cutting herself. At 15, she was diagnosed with bipolar disorder. After being raped at 17, she began suffering from post-traumatic stress disorder. A few years later, she attempted suicide. After giving birth to two children, she suffered from postpartum depression. She has continued to suffer from depression and reports that she has had auditory and visual hallucinations. She has also been diagnosed with anxiety, obsessive compulsive disorder, and attention deficit hyperactivity disorder.

In addition to her mental impairments, she suffers from physical health impairments. In 2012, she was diagnosed with fibromyalgia and chronic pain. In 2013, she began experiencing migraine headaches, fatigue, and sleep disturbances. She has also been diagnosed with degenerative disc disease of the cervical spine.

**Treatment and Opinions by Treating Professionals**

Ms. Hawkes received intermittent mental health treatment during her teenage years and early twenties. But in early 2013, she began receiving regular mental health treatment at Aspen Pointe. Shortly thereafter, she was hospitalized briefly because she was suicidal and having command hallucinations. Aspen Pointe treated her through medication and therapy. After six months, she experienced a reduction of symptoms and asked to be treated with medication, only. In November 2013, she reported that she was not suffering from depression and had not had any hallucinations. She told Aspen Pointe that "she runs around a lot, running errands for her mother while kids are in school." She was also baking for leisure and exercising. But, in January 2014, she reported that she was depressed and got angry easily, was sleeping more, was paranoid, and had had a visual hallucination. Two months later, she reported that she was not depressed, had not had hallucinations, delusions, or paranoia, and was busy helping her mother and father during the day.

In March 2014, Ms. Hawkes stopped treatment by Aspen Pointe, and began treatment with Psychiatric-mental Health Nurse Practitioner Sandra F. Yaney. Ms. Yaney stated that when Ms. Hawkes first began receiving treatment from her, she was "in a manic and paranoid state, with high distractibility and pressured speech. She was sleeping about 5 hours per day, had obsessive thoughts, ritualistic behaviors, no appetite, and described her energy as 'great'." Over the course of the next year, Ms. Yaney worked with Ms. Hawkes to find an effective medication regimen. During that year, she observed Ms. Hawkes "severely depressed, manic, in pain, and picking her skin to the point of excoriation." By March 30, 2015, Ms. Yaney believed that they had determined what medications would best assist Ms. Hawkes. However, she opined,

> Now that Ms. Hawkes has finally found a helpful and comprehensive med regimen, I believe that she could benefit from a thorough vocational rehab

3

assessment. If she continues to remain stable; I believe that she could engage in a home-based business of some kind with minimal social interaction. However, I think it is unlikely that she will be able to derive sufficient income from this to support herself and her two children.

Ms. Yaney retired, and Ms. Hawkes began receiving treatment from Psychiatric/Mental Health Nurse Practitioner Mark Jankelow. She visited him approximately six times between June 8, 2015 and September 30, 2015. On October 8, 2015, Mr. Jankelow filled out a Mental Residual Functional Capacity Statement for Ms. Hawkes. In it, he opined that Ms. Hawkes would be off task more than 30% of the time during an eight-hour workday, would be absent four days or more each month, and would not be able to complete an eight-hour workday three days each month. He said, "It would be extremely difficult for Ms. Hawkes to function in a work environment due to her disabilities."

Concurrently with her mental health treatment, Ms. Hawkes was receiving treatment for her physical limitations. Dr. Divakara Kedlaya diagnosed her with fibromyalgia and chronic pain in May 2012 and provided her with pain management treatment until she began seeing Physician Assistant Peter Brumlik, Ph.D., who was working under the direction of Dr. Wiley J. Jinkins. Ms. Hawkes also complained of migraine headaches, and a radiology report revealed that she had mild disc narrowing at C5-C6. On October 19, 2015, Dr. Brumlik completed a Functional Limitations Statement (Physical) for Ms. Hawkes. He opined that she could only sit, stand, or walk for less than two hours during an eight-hour workday, was precluded from working forty hours per week on a regular and continuing basis, and would be absent more than two days per month.

**Opinions by Non-treating Professionals**

Dr. Lillian M. Moeller performed a psychological evaluation on Ms. Hawkes. She reviewed Ms. Hawkes' relevant medical records and also conducted an in-person interview with

her. On July 7, 2014, she opined,

> Based both on clinical interview and on personality testing, the patient shows very significant mental illness, including Bipolar Affective Disorder, Substance Abuse Disorder, Posttraumatic Stress Disorder, and a Personality Disorder. Additionally, the patient experiences chronic pain from fibromyalgia. Both her depression and chronic pain severely limit her ability to be gainfully employed and I doubt that she will ever return to even part-time employment.

Dr. Ronald Jendry performed an independent medical examination on Ms. Hawkes on April 9, 2015. After reviewing her medical records and performing a medical examination, he opined that she could sit without limitations, could stand for six hours, and could walk for four to six hours during an eight-hour workday. He estimated that she could lift fifteen or more pounds frequently and twenty to twenty-five pounds occasionally. He also opined that she could bend, stop, crouch, and/or crawl frequently and could reach overhead, push, pull, handle, grasp, finger, and/or feel without limitations.

Finally, Dr. Anthony Gottlieb, a State agency psychiatrist, reviewed Ms. Hawkes' file but did not personally examine her. He opined that she suffered from multiple, moderate limitations on abilities relevant to whether she could perform either her past relevant work or other substantial gainful work existing in the national economy. However, he ultimately opined that she could work notwithstanding those moderate limitations.

## THE ALJ'S DECISION

To determine whether Ms. Hawkes is disabled[2], the ALJ analyzed her case pursuant to

---

[2] A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). To support a finding of disability, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least a period of twelve months. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a). If a claimant has multiple severe impairments, the Commissioner must consider their combined effects in rendering a decision. *Campbell v. Brown*, 822 F.2d 1518, 1521 (10th Cir. 1987).

the sequential five-step inquiry.³ At step one, the ALJ found that Ms. Hawkes had not worked or engaged in substantial gainful activity after the alleged onset date. At step two, the ALJ found Ms. Hawes had medically severe impairments: affective disorder (bipolar disorder), anxiety disorder, fibromyalgia, obesity, and chronic pain disorder. At step three, the ALJ found that Ms. Hawkes' impairments did not equal the severity of a listed impairment in the appendix of the regulations. At step four, the ALJ first assessed Ms. Hawkes Residual Functional Capacity ("RFC") and determined,

> [Ms. Hawkes] has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that [she]: can stand and/or walk, with normal breaks, for a total of six hours in an eight-hour workday; can sit, with normal breaks, up to six hours in an eight hour workday; can lift and/or carry 10 pounds frequently and 20 pounds occasionally; can perform pushing and pulling motions with [her] upper and lower extremities with the aforementioned weight restrictions; can occasionally climb ladders, ropes and scaffolds, and can frequently climb rams and stairs and crawl. In addition, [she] requires unskilled work, with an SVP of two or less, not in close proximity to coworkers or supervisors (meaning that the individual could not function as a member of a team), and minimal to no direct contact with the public.

The ALJ then found that Ms. Hawkes could not perform her past relevant work as a server. However, at step five, the ALJ found that Ms. Hawkes could perform jobs that exist in significant numbers in the national economy and thus, Ms. Hawkes was not disabled.

---

³The sequential five-step inquiry is as follows: (1) the Commissioner first determines whether a claimant is working and engaging in substantial gainful activity; (2) if not, the Commissioner asks whether the claimant has a medically severe impairment or impairments; (3) if so, the Commissioner determines whether the claimant meets or equals a listed impairment in the appendix of the regulations; (4) if not, the Commissioner then considers whether the claimant's impairments prevent her from performing her past relevant work; and (5) if so, the Commissioner determines whether the claimant possesses the residual functional capacity to perform other work that exists in significant numbers in the national economy. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). The claimant carries the burden to establish a *prima facie* case of disability at steps one through four, after which the burden shifts to the Commissioner at step five to show that the claimant retains the ability to work. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013).

## ISSUES PRESENTED

Ms. Hawkes raises four objections to the ALJ's decision: (1) that the ALJ failed to adequately account in the RFC for Dr. Gottlieb's opinions that Ms. Hawkes suffered from moderate limitations; (2) that the ALJ erred in giving Mr. Jankelow's opinion little weight; (3) that the ALJ's finding that Ms. Hawkes was not credible is not supported by substantial evidence; and (4) that the ALJ failed to give Ms. Hawkes' mother's statement appropriate weight.

## STANDARD OF REVIEW

On appeal, a reviewing court's judicial review of the Commissioner of Social Security's determination that claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. *Hamilton v. Sec'y of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). If the ALJ failed to apply the correct legal standard, the decision must be reversed, regardless of whether there was substantial evidence to support factual findings. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). In determining whether substantial evidence supports factual findings, substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires more than a scintilla but less than a preponderance of the evidence. *Lax*, 489 F.3d at 1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although a reviewing court must

meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

## ANALYSIS

### A. Whether the ALJ adequately accounted for Dr. Gottlieb's opinions that Ms. Hawkes suffered from moderate limitations when determining her RFC

Ms. Hawkes argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to "explain the exclusion of Dr. Gottlieb's opinion that Ms. Hawkes is moderately limited in the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and maintain attention and concentration for extended periods." The Commissioner responds that such an explanation was unnecessary because the ALJ "adequately accounted for Dr. Gottlieb's opinion when he (sic.) found that [Ms. Hawkes] could perform unskilled work with a [specific vocational preparation] of one or two that required minimal or no public contact and no working in close proximity to coworkers or supervisors."

Simply because a claimant suffers from moderate limitations "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do past relevant work at step four of the sequential evaluation process and to do other work at step five on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184 at *2 (July 2, 1996). It is the most that a claimant is able to do despite her physical and mental limitations, and is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a). In determining the RFC, the ALJ must consider limitations and restrictions

imposed by all of an individual's impairments, even those that are not severe. 20 C.F.R. § 404.1523; SSR 96-8p, 1996 WL 374184 at *5.

Ms. Hawkes is correct that the ALJ did not expressly address Dr. Gottlieb's opinions that Ms. Hawkes suffered from multiple, moderate limitations in her ability to work in the RFC assessment or elsewhere in her written decision. However, reading the ALJ's decision together with Dr. Gottlieb's assessment, the Court cannot find that that the ALJ failed to consider Ms. Hawkes' moderate limitations. In his assessment, Dr. Gottlieb opined that Ms. Hawkes suffered moderate limitations as to following abilities:

(1) to understand and remember detailed instructions,

(2) to carry out detailed instructions,

(3) to maintain attention and concentration for extended periods,

(4) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest,

(5) to interact with the general public,

(6) to accept instructions and respond appropriately to criticism from supervisors,

(7) to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and

(8) to respond appropriately to changes in the work setting moderately limited.

However, taking these limitations into consideration, he ultimately opined,

> [W]hen work does not involve tasks of more than limited complexity and attention to detail, limitations of attendance and pace will not prevent the completion of a normal workday/workweek or significantly reduce pace. [Ms. Hawkes] can perform at a consistent pace without an unreasonable number and length of rest periods when work demands are within [mental residual functional capacity] restrictions.

The ALJ gave Dr. Gottlieb's assessment of Ms. Hawkes' medical records great weight when determining Ms. Hawkes' RFC and essentially adopted it. The assessment accounts for

9

Ms. Hawkes' moderate limitations. In adopting Dr. Gottlieb's assessment, the ALJ, of necessity, also accounted for them. Indeed, in her decision, she noted that

> [Ms. Hawkes] cannot work closely with supervisors or coworkers … can accept supervision and relate to coworkers, if contact is not frequent or prolonged … should have minimal to no contact with the general public … [and] that [her] symptoms may interfere with completion of a normal workday or workweek or may cause inconsistent pace.

Therefore, the ALJ did not exclude Dr. Gottlieb's opinions that Ms. Hawkes suffers from moderate limitations affecting her ability to work.

### B. Whether the ALJ erred in giving Mr. Jankelow's opinion little weight

Next, Ms. Hawkes argues the ALJ overlooked treatment records and did not consider any of the appropriate factors when she assigned the opinion of Mr. Jankelow, a psychiatric-mental health nurse practitioner, little weight. The Commissioner argues that Mr. Jankelow's opinion is not supported by any treatment notes memorializing Ms. Hawkes' appointments with him and is inconsistent with the record as a whole.

The weight to be given Mr. Jankelow's opinion depends first on whether he is an acceptable medical source.[4] Acceptable medical sources include licensed medical or osteopathic doctors, psychologists, optometrists, podiatrists, and qualified speech-language pathologists, and non-acceptable medical sources include nurse practitioners, physicians' assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. *See* SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 6, 2006). As Ms. Hawkes concedes, Mr. Jankelow is not an acceptable medical source because he is a nurse practitioner. *See* SSR 06-03p, 2006 WL

---

[4] After Ms. Hawkes filed her claim, the Social Security Administration promulgated new regulations governing the weight that should be given to medical evidence. For claims filed after March 27, 2017, the weight given to medical opinions, in most circumstances, no longer depends on whether the medical source is acceptable or non-acceptable. *See* 20 C.F.R. §§ 404.1520c, 404.1527, 416.920c & 416.927. But because Ms. Hawkes filed her claim before March 27, 2017, the distinction between acceptable and non-acceptable medical sources still affects what weight should be given to the medical evidence presented in this matter.

2329939, at *1 (Aug. 6, 2006). Even though he is not an acceptable medical source, however, the ALJ was required to consider his opinion and explain in a manner that permits the Court to follow her reasoning what weight she gave it and why. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163-64 (10th Cir. 2012).

When determining the weight of medical evidence from a non-acceptable medical source, an ALJ may consider six factors:

> [1] How long the source has known and how frequently the source has seen the individual; [2] How consistent the opinion is with other evidence; [3] The degree to which the source presents relevant evidence to support an opinion; [4] How well the source explains the opinion; [5] Whether the source has a specialty or area of expertise related to the individual's impairment(s); and [6] Any other factors that tend to support or refute the opinion.

SSR 06-03p, 2006 WL 2329939, at *4-5. None of these factors are controlling; not all of them apply to every case, and an ALJ need not expressly address each factor in his or her decision. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In the present matter, the ALJ gave Mr. Jankelow's opinion little weight based on the second and third factors. She found, "He did not provide any supporting treatment notes and [his opinion] is inconsistent with the record as a whole."

**1. Whether Mr. Jankelow provided supporting treatment notes**

As to the first reason, Ms. Hawkes cites to six documents memorializing six appointments she had with Mr. Jankelow prior to the evidentiary hearing before the ALJ. She argues, "The ALJ was incorrect in stating that there were no supporting treatment records provided." The Commissioner responds that the ALJ did not say that Mr. Jankelow failed to provide any medical records; instead, the records provided, except for Ms. Hawkes' subjective statements, do not support Mr. Jankelow's opinion, and the ALJ was not required to give weight to Mr. Jankelow's opinion because it is "based substantially on [Ms. Hawkes'] subjective

11

complaints."

The ALJ addressed Mr. Jankelow's opinion in a single paragraph. All but the final two sentences of the paragraph summarize the opinion, and in the final two sentences, the ALJ merely states that she gives the opinion little weight for the reasons quoted above. She does not acknowledge, much less discuss, Mr. Jankelow's treatment notes. Contrary to the Commissioner's assumption, there simply is nothing in the Decision that the ALJ considered the treatment notes Ms. Hawkes cites. To the contrary, it appears that the ALJ believed no records existed.

The ALJ was not required to discuss every item of evidence before her, but she was required to "discuss the uncontroverted evidence [she chose] not to rely upon, as well as significantly probative evidence [she] reject[ed]." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). The failure to do so makes it impossible for an appellate court to assess whether an ALJ's decision is supported by substantial evidence and requires reversal and remand for the ALJ to set out specific findings and reasons for accepting or rejecting the uncontroverted or substantially probative evidence the ALJ did not rely on or rejected. *Clifton*, 79 F.3d at 1009-10.

The treatment notes provide evidence supporting a finding that Ms. Hawkes is disabled. For example, on June 8, 2015, Ms. Hawkes stated that her mood/affect was "7 or so" and her anxiety was "8 or 9 or so" and that she was experiencing a "lot of panic"; on August 31, 2015, Ms. Hawkes reported that she was "very tired", her mood/affect was " or 7 or so", and anxiety was "7-8", and Mr. Jankelow noted that she was paranoid and distracted; on September 21, 2015, she said, "I've just been very angry" and that she was "depressed and sleeping as much as I possibly can", her mood/affect was "10 or so right now", and her anxiety was "6 or 7 or so", and

Mr. Jankelow noted that she was moderately dangerous and distracted. R. 631-35. These notes support Mr. Jankelow's opinion that Ms. Hawkes would be unable function in a work environment because of her disabilities.

The Court rejects the Commissioner's argument that the ALJ appropriately disregarded Mr. Jankelow's opinion under *White v. Barnhart*, 287 F.3d 903 (10th Cir. 2002), as a post hoc argument. *Frantz*, 509 F.3d at 1302. To the extent that *White v. Barnhart* stands for the proposition that a medical provider's opinion may be disregarded because it is based substantially on a claimant's subjective complaints[5], that was not the rationale offered by the ALJ. Thus, the Court will not consider whether this argument justifies affirming the ALJ's decision.

The ALJ's finding that Mr. Jankelow failed to produce supporting treatment notes is factually erroneous, and consequently the ALJ's reliance of such fact to reject Mr. Jankelow's opinion is not supported by substantial evidence. If, perhaps, the ALJ meant that the six medical records provided by Mr. Jankelow do not support his opinion, the ALJ failed to discuss the notations in the records that do support her opinion and why she rejected them, which makes it impossible for the Court to determine whether her first reason for rejecting the opinion is supported by substantial evidence. This is legal error. However, before reversing the Decision, the Court assesses whether such error is harmless. It might be if the ALJ's second reason for

---

[5] The Court has substantial doubts as to whether *White v. Barnhart* stands for the sweeping proposition asserted by the Commissioner: that a medical provider's opinion may be disregarded simply because it is based substantially on a claimant's subjective complaints. That case involved a claimant who claimed she was disabled because of back pain. The ALJ hearing the case rejected the claimant's treating physician's opinion because the physician failed to perform a detailed physical examination of the claimant, relying instead on her subjective complaints, opined that the claimant's condition had deteriorated over the course of a year even though x-rays showed no change, and only started treating her more than one year after the claimant filed for disability benefits. The Tenth Circuit held that these reasons, taken together, were sufficient to disregard the physician's opinion. 287 F.3d at 908.

13

rejecting Mr. Jankelow's opinion – that Mr. Jankelow's opinion was inconsistent with the record as a whole – is supported by substantial evidence.

### 2. Whether Mr. Jankelow's opinion is inconsistent with the record as a whole

The ALJ's second reason for disregarding Mr. Jankelow's opinion was because it was inconsistent with the record as a whole. Unfortunately, the ALJ did not explain how such opinion conflicted with the record as a whole, but her reasoning can be inferred. *See Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009). Earlier in the Decision, the ALJ found that Ms. Hawkes' disabilities stabilized by June 2014, and "the record does not indicate that [Ms. Hawkes'] symptoms did not remain stable with medication." The ALJ noted that (1) in September and November 2013, she requested to cease counselling and receive treatment with only medication, was experiencing improved mental health, had not had any hallucinations, had increased energy, was running errands for and helping her parents, and was baking for leisure; (2) in March 2014, she still did not want to receive counselling, was overwhelmed but not depressed, was not having hallucinations or delusions, was "staying busy with 'lots of running around' and helping her parents", and did not have any psychotic symptoms; and (3) although in April 2014, Ms. Hawkes experienced mania and paranoia, "by June 2014, her bipolar disorder was responding to … medication and anxiety was better." Mr. Jankelow's opinion is inconsistent with the ALJ's finding that Ms. Hawkes' condition had stabilized with medication as of June 2014 and did not deteriorate thereafter, and thus the ALJ found it to be inconsistent with the record as a whole.

In disregarding Mr. Jankelow's opinion as inconsistent with the record, the ALJ either overlooked or disregarded other record evidence that Ms. Hawkes' condition failed to remain stable after June 2014. Putting aside Mr. Jankelow's notes, treatment notes by his predecessor,

14

Ms. Yaney, show that between June 2014 and September 2015, Ms. Hawkes experienced several periods of mania and depression. On June 10, 2014, Ms. Yaney noted that Ms. Hawkes was experiencing decreased symptoms of mania, anxiety, and attention deficit disorder, was picking herself less, but was still distracted and overspending. R. 647. Ms. Yaney did not make any additional notations in Ms. Hawkes' records until October 28, 2014, when she noted that Ms. Hawkes had started picking herself again. R. 644-46. Although Ms. Hawkes appeared to be feeling better in November 2014, she began exhibiting behaviors indicating that she was entering a manic state: trouble sleeping, compulsive shopping, and impulsiveness. R. 642-43. On January 14, 2015, Ms. Yaney listed her diagnostic impression of Ms. Hawkes as "Very depressed". R. 641. Two weeks later, Ms. Hawkes did not appear as depressed, but on February 24, 2015, Ms. Yaney's diagnostic impression of Ms. Hawkes was "Bipolar, more depressed". R. 639-40. The only other notation Ms. Yaney made in Ms. Hawkes' records before transferring her treatment to Mr. Jankelow was that on May 29, 2015 Ms. Hawkes was feeling very stressed and anxious because her disability claim had been denied. As discussed above, after Mr. Jankelow started treating Ms. Hawkes, he noted that she suffered from anxiety, fatigue, panic, paranoia, anger, and depression, was at times distracted, and on at least one occasion, posed a moderate danger to herself or others. R. 631-35.

Clearly, Mr. Jankelow's opinion and treatment notes were consistent with part of the record, notably Ms. Yaney's treatment notes. The question is why the ALJ thought Mr. Jankelow's opinion was inconsistent with the record "as a whole". To address that question, the ALJ was required to address Ms. Yaney's treatment notes which would have supported a finding that Ms. Hawkes was disabled. *Clifton*, 79 F.3d at 1009-10. However, the Decision lacks any discussion whatsoever about Ms. Yaney's treatment of Ms. Hawkes and the similarity of her

15

observations to those by Mr. Jankelow. The Court finds that the ALJ's second reason for rejecting Mr. Jankelow's opinion is not supported by substantial evidence.

Because the ALJ's reasons for rejecting Mr. Jankelow's opinion are either not supported by substantial evidence or not adequately addressed by the ALJ in the Decision, the Decision must be reversed and remanded.

### C. Ms. Hawkes' remaining issues

Inasmuch as it has determined that this matter must be remanded for the ALJ, the Court need not address Ms. Hawkes' remaining arguments that the ALJ improperly determined that she was not credible and did not give her mother's statement appropriate weight. *Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006).

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** to the ALJ for further proceedings. The Clerk shall enter a judgment in this matter.

**Dated this 3rd day of November, 2017**

BY THE COURT:

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Court